UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE PICKETT,

Plaintiff,

v.

ROBERT MARZANO, *et al*,

Defendant.

Case No.: 16-11353

Linda V. Parker
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT (Dkts. 15, 17)**

## I.   PROCEDURAL HISTORY

Plaintiff brought this action *pro se* under 42 U.S.C. § 1983.  (Dkt. 1).

Plaintiff filed his complaint in Wayne County Circuit Court; defendants timely

removed the case to the United States District Court for the Eastern District of

Michigan on April 13, 2016.  (Dkt. 1).  District Judge Linda V. Parker referred

pretrial matters in this case to the undersigned on May 10, 2016.  (Dkt. 4).  On

March 13, 2017, defendant officers Matt Clemence, Andrew Kirby, and Officer

Krueger filed their motion for summary judgment.  (Dkt. 15).  Plaintiff responded,

(Dkt. 20), and defendant officers replied.  (Dkt. 21).  On March 20, 2017,

defendant Robert Marzano filed his motion for judgment on the pleadings and

alternative motion for summary judgment.  (Dkt. 17).  Plaintiff responded, (Dkt.

22), and Marzano replied.  (Dkt. 23).  Plaintiff filed a motion for summary

judgment on June 15, 2017.  (Dkt. 24).  The defendant officers responded on June

29, 2017, (Dkt. 25), and Marzano responded July 6, 2017.  (Dkt. 27).  However,

plaintiff's motion was filed well after the dispositive motion cut-off date of March

20, 2017, and was ordered stricken.  (Dkt. 28).

## II.   FACTUAL BACKGROUND

Based on the record, the facts that follow appear to be undisputed by any

party, unless otherwise noted.  On February 24, 2014, Officers Krueger and Kirby

were dispatched to the First United Methodist Church in Northville, Michigan

(housing a traveling homeless shelter) for a report of assault and battery.  (Dkt. 15,

Pg ID 77).  Dispatch advised that the suspect, "Maurice," was with church security.

(*Id.*).  Officer Krueger, who arrived first, observed blood on the face of the victim,

Rodenetta Lundy.  (*Id.* at Pg ID 77-78).  Officer Kirby noticed blood on the

victim's face and shirt.  (*Id.*).  Ms. Lundy reported that "Maurice" walked into the

women's sleeping room and told her to get off her cell phone.  (*Id.* at Pg ID 78;

Dkt. 1, Pg ID 10).  Before she could respond, "Maurice" punched her in the face

for not getting off of her cell phone.  (Dkt. 15, Pg ID 78).  Ms. Lundy stated that

she had known "Maurice" for over thirty years and they grew up together.  (*Id.*;

Dkt. 15-2, Pg ID 96).  She also stated that she wanted to press charges.  (*Id.*).  Ms.

Lundy's sister Diane Lundy witnessed the altercation.  (*Id.*).  Neither officer

obtained a description of Maurice from the victim.  (Dkt. 1, Pg ID 10).  Diane

Lundy confirmed the victim's version of events and also reported that Maurice

went downstairs after the altercation.  (Dkt. 15, Pg ID 78).  The church coordinator accessed the shelter roster for Officer Krueger.  The roster listed the suspect as "Maurice Pickett."  (*Id.* at Pg ID 79; Dkt. 15-2, Pg ID 96).  Additionally, Officer Kirby asked the church security guard, Eddie Gaston, where "Maurice" was; Mr. Gaston responded that he was downstairs and took the officer to him.  (*Id.*).  Officer Kirby met with Maurice and asked him to explain what happened; Maurice refused to provide any information.  (*Id.*).  Officer Kirby noticed that Maurice was wearing a nametag that read "Maurice Pickett."  (*Id.*; Dkt. 1, Pg ID 10).  Once Officer Krueger informed Officer Kirby that the victim wanted to press charges, Officer Kirby arrested Maurice for assault and battery.  (Dkt. 15, Pg ID 79; Dkt. 1, Pg ID 10).

After arresting plaintiff, the two officers searched his property and discovered paperwork indicating that he also goes by the name "Raymond Lane," the name on his Michigan Department of Corrections ("MDOC") parole information.  (Dkt. 15, Pg ID 79).  Lane was on parole.  (*Id.*).  MDOC placed a hold on plaintiff and advised the officers not to release him from jail.  (*Id.*).  Plaintiff's parole officer, Agent Michelle Lopez, confirmed that Raymond Lane and Maurice Pickett are the same person and that the citation should be written to Raymond Lane.  (*Id.* at Pg ID 79-80).  Defendant Clemence then obtained authorization from the 35th District Court to void the initial citation and to re-issue

the citation in the name of Raymond Lane. (*Id.* at Pg ID 80). Plaintiff does not dispute that he goes by both names.

Plaintiff was arraigned on the assault and battery charge on February 25, 2014, and subsequently obtained counsel. (Dkt. 17, Pg ID 120). Plaintiff's attorney appeared for pretrial hearings on March 3, 2014 and agreed to a two-week adjournment of the pretrial hearing until March 17, 2014. (*Id.*). At the pretrial hearing, the court set a trial date for March 31, 2014. (Dkt. 15, Pg ID 80). Officer Kirby sent trial notices—rather than subpoenas[1]—to the victim and her sister, but both failed to appear at trial. (Dkt. 17, Pg ID 121). The 35th District Court judge dismissed the case without prejudice. (Dkt. 15, Pg ID 80). Defendant Clemence was informed that Raymond Lane still had an MDOC hold on him for a parole violation, so Clemence took him back to the Northville Township Police Department to await transport back to the Wayne County Jail. (Dkt. 15-2, Pg ID 99).

## III.  PARTIES' ARGUMENTS

Construed liberally, the Court understands plaintiff's claims to be the following: (1) Fourth Amendment illegal detention and false imprisonment; (2)

---

[1] There is some inconsistency in the facts as presented by defendant officers and Marzano. In their case reports, defendant officers say they sent both Lundy women subpoenas (Dkt. 15, Pg ID 80, 99). Clemence notes in a report that neither witness was personally served with subpoenas due to difficulty in locating them. (*Id.* at Pg ID 99). However, the trial transcript indicates, and Marzano acknowledges, that the Lundy women were sent trial notices, not subpoenas. (Dkt. 17, Pg ID 167-68).

misprision of felony and malicious prosecution; (3) conspiracy to bring false charges and commit perjury; (4) Fourth Amendment lack of probable cause for arrest; and (5) violation of the Fourteenth Amendment, Section Three.  (Dkt. 1, Pg ID 10-11).  Plaintiff's claims center on his allegation that Officers Kirby and Krueger did not have probable cause to arrest him at the Church.  (*Id.*).

In their motion for summary judgment, defendant officers argue that they are protected by qualified immunity against plaintiff's claims.  (Dkt. 15).  They assert that a reasonable officer would have believed there was probable cause for plaintiff's arrest, and that plaintiff is unable to establish his claims because they in fact had probable cause to arrest him for assault and battery based on the facts recited above.  (*Id.*).  As a consequence, defendant officers contend that plaintiff has failed to meet his burden of establishing that they are not entitled to qualified immunity.  (*Id.* at Pg ID 81-82).

The defendant officers construe the complaint to also include state law claims of false arrest, false imprisonment, and malicious prosecution.  They argue that they are entitled to governmental immunity on state law claims, and in the alternative, that plaintiff is unable to establish his claims because there was probable cause for his arrest.  (*Id.* at Pg ID 86-89).

Plaintiff also raises his false arrest, false imprisonment, and malicious prosecution claims under the umbrella of substantive due process, but the

5

defendants argue that these claims are more properly analyzed under the Fourth Amendment because the Fourth Amendment provides the source of constitutional protection against alleged violations of search and seizure. (*Id.* at Pg ID 84).

As to plaintiff's civil conspiracy claim, defendant officers argue that, because a civil conspiracy requires an agreement between two or more people to accomplish an unlawful purpose, plaintiff cannot establish this claim because the officers did not accomplish an unlawful purpose in arresting plaintiff—they had probable cause to do so. (*Id.* at Pg ID 89).

Plaintiff responds to the defendant officers in his objection to the summary judgment motion, which the undersigned construes as a response, that the defendant officers are not entitled to qualified immunity because they acted in contradiction to the Constitution. (Dkt. 20, Pg ID 175). He insists that the defendant officers did not have probable cause to arrest him because the victim did not identify him as the perpetrator in person or by subsequent line-up before his arrest or give a description of him. (*Id.* at Pg ID 175-76).

Defendant Marzano, a City of Northville assistant prosecutor, argues he is entitled to judgment on the pleadings or in the alternative to summary judgment.[2] (Dkt. 17, Pg ID 121-22). As an initial matter, he claims that he is shielded by

---

[2] Marzano moved for Judgment on the Pleadings under 12(c) in the alternative to summary judgment. Because the Court is considering materials outside the pleadings, the Court will apply Fed. R. Civ. P. 56.

prosecutorial immunity because his actions relating to plaintiff's prosecution were taken solely within his judicial capacity. (*Id.* at Pg ID 123-4). Alternatively, if the Court does not apply prosecutorial immunity, then Marzano contends that he is entitled to qualified immunity. (*Id.* at Pg ID 116-17).

Regarding plaintiff's civil conspiracy claim, Marzano states he is entitled to prosecutorial immunity because, even if it were true that he conspired with the police officers to bring false charges, Marzano was acting as an advocate in deciding to bring charges. (*Id.*). Acting as advocate is acting within his judicial capacity. (*Id.*). Further, he argues that because he was the agent of the city he could not have conspired with the city to bring false charges. (*Id.* at Pg ID 132).

Additionally, Marzano argues that he is entitled to absolute or qualified immunity as to any issues arising from his reliance on the trial notices sent to the victim and her sister, and their failure to appear. (*Id.* at Pg ID 124). Ambiguity over whether the victim and her sister were sent subpoenas or trial notices was cleared up at the trial—they were sent trial notices, not subpoenas. (*Id.* at Pg ID 167-68). Marzano acknowledges that courts have distinguished between acts of a prosecutor that may be considered "investigative" or "administrative" versus those considered to be judicial because courts have held the former acts to be entitled only to qualified immunity. However, even investigatory and administrative acts of a prosecutor can be entitled to absolute immunity when they are "antecedent or

extraneous of the judicial process." (*Id.* at Pg ID 124-25) (citing *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997)).  He argues that he reasonably relied on trial notices sent to the two women to their last known addresses, an act done as part of the judicial process.  (*Id.* at Pg ID 125).

As an alternative to absolute immunity, Marzano argues he is protected by qualified immunity because there was no violation of a constitutional right since he had probable cause to prosecute plaintiff.  (*Id.*).  Should the court find that Marzano is not entitled to any immunity, he argues plaintiff's claims should be dismissed because plaintiff cannot establish any of his claims since there was probable cause to arrest him (arguing the same facts the defendant officers use to establish probable cause).  (*Id.* at Pg ID 127).  He argues that plaintiff's Fourteenth Amendment, section 3, perjury claim should be dismissed because it is inapplicable here since Marzano is not alleged to have given aid to any enemies of the United States or rebelled against the United States or the Constitution.  (*Id.* at Pg ID 130-31).

Lastly, Marzano argues that plaintiff's civil conspiracy claim should be dismissed because plaintiff did not plead any facts beyond a conclusory allegation of an agreement between himself and the Northville police officers.  (*Id.* at Pg ID 132).  Further, he argues that there could not have been a conspiracy involving him

because, as advocate and agent for the city, the agent and client cannot agree to a conspiracy.  (*Id.* at Pg ID 133).

Plaintiff objected, which the undersigned construes as a response, by arguing that Marzano is not entitled to immunity because ignorance of the law is no excuse for an official.  (Dkt. 22, Pg ID 207).  Plaintiff contends that Marzano lacked subject matter jurisdiction to prosecute him because there was no sworn affidavit of the complaining witness filed against him pursuant to Mich. Ct. Rule 6.102(b) and Mich. Comp. Laws § 764.9(g).  (*Id.* at Pg ID 208).  Plaintiff further argues that there was no probable cause for his arrest because the victim had not sworn to the citation against him, did not provide a description of him to the police, and never made a report to establish probable cause because the officers did not have a description of the perpetrator.  (*Id.*).  Plaintiff contends that because the victim never positively identified him, Marzano had no authority to prosecute him.  (*Id.* at Pg ID 209).

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support that assertion

by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also

for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

The Court may, in its discretion, grant summary judgment before discovery has commenced where the decision on summary judgment is a purely legal question. *Bell v. Johnson,* 308 F.3d 594, 601 (6th Cir. 2002) ("qualified immunity is a question of law"). Like qualified immunity, whether absolute immunity applies is also a legal question. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). "When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right." *Folks v. Petit*, 676 Fed. Appx. 567, 569 (6th Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015)). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (citation omitted).

     **B.**    <u>The Officers' Motion for Summary Judgment (Dkt. 15)</u>

          1.    Qualified Immunity

               a.    Fourth Amendment Claims

Plaintiff asserts the following claims which the undersigned construes as pled under the Fourth Amendment: false arrest, false imprisonment, and malicious prosecution.  Defendant officers are entitled to summary judgment on the false arrest and false imprisonment claims because, as explained below, they had probable cause to arrest plaintiff.  Defendants are entitled to summary judgment on the malicious prosecution claim because there is no evidence that they participated in plaintiff's prosecution in anything other than a neutral manner.

As to the false arrest and false imprisonment claims, defendants are entitled to qualified immunity.  "The doctrine of qualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendants' conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first part of the test required a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id.* If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id.* If both questions were resolved in the affirmative, then the doctrine of qualified immunity would not apply and the case can proceed.

The Supreme Court later revisited its formulation and discarded the mandatory sequencing of the two-part qualified immunity test, finding that it was no longer sound based on several factors, including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). While leaving intact the factors that should be considered in such a decision, the Court held that sometimes it makes sense to decide the second part of the test first; and that such a decision may resolve the controversy without having to address the first part of the test. *Id.* In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Bypassing the perhaps more complicated inquiry of whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established. Specifically, the Court concluded that where lower court case law was consistent

with the conduct of the officers, "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244-45. "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'" *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Whether there was a constitutional violation giving rise to plaintiff's claims of false arrest and false imprisonment depends on whether defendant officers had probable cause to arrest plaintiff. As the Sixth Circuit stated, "A [police officer] is entitled to qualified immunity" on a false arrest and false imprisonment claim "if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the [police officer]." *Kennedy v. City of Villa Hills,* 635 F.3d 210, 214 (6th Cir. 2011). The clearly established law in this circuit establishes that "[a]n eyewitness identification – standing alone – is sufficient to establish probable cause unless the officer has some reason to believe at the time of the arrest that the eyewitness is lying or mistaken." *Thomas v. Noder-Love*, 621 Fed. Appx. 825, 832 (6th Cir. 2015) (citing *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999); see also *Thacker v. City of Colombus*, 328 F.3d 244, 257 (6th Cir. 2003) (a victim's accusations alone without a statement from accused was sufficient for probable cause). A

15

police officer has probable cause to arrest a suspect if the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979); *Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir. 2003) ("Insofar as the question of probable cause here is a close one, reasonable officials could disagree as to whether probable cause existed.  Thus, the defendant officers are entitled to qualified immunity on Thacker's Fourth Amendment seizure claim.") (internal citations omitted)).  Probable cause means a "fair probability." *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  Once probable cause is established, an officer "is under no obligation to continue investigating and may instead pursue the arrest of a suspect." *Crockett v. Cumberland College*, 316 F.3d 571, 584 (6th Cir. 2003) (citation omitted).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir. 1989)).  Finally, "An eye witness's statement that he or she saw a crime committed or was the victim of a crime is generally sufficient to establish probable cause" and nothing casts doubt on the victim's reliability.  *United States v. Shaw*, 464 F.3d

615, 623 (6th Cir. 2006) (citing *United States v. Harness*, 453 F.3d 752 (6th Cir. 2006)).

Here, the only "reasonable determination" on probable cause is that the officers could reasonably believe they had probable cause to arrest plaintiff.  *See United States v. Garrett*, 495 F. Supp. 159, 164 (S.D. Tex. 1980) (finding no probable cause based on informant's tip that contained no named suspects, no descriptions, no date, no location).  Plaintiff has failed to bring evidence to show that the officers lacked probable cause for arrest.  Even though no eyewitness identified him in a line-up, the arresting officers had reliable facts that established probable cause.  Specifically, they relied on the following facts:  (1)  the officers were dispatched to the church on a report of assault and battery; (2) upon arriving at the church, they observed the complaining victim with blood on her face and shirt; (3) the victim identified her assailant as "Maurice" whom she had known for over 30 years, and with whom she had grown up; (4) two witnesses – Diane Lundy and the security guard told officers that Maurice had gone downstairs; (5) the shelter manager indicated that the shelter roster listed the suspect as "Maurice Pickett"; and (6) officers located plaintiff downstairs, wearing a nametag reading "Maurice Pickett."   (Dkt. 15, Pg ID 83).  Furthermore, the officers state, and the evidence supports, that there was no reason to believe the victim was lying.  (*Id.* at Pg ID 83).  Reliance on reliable eyewitness statements is sufficient to provide

17

probable cause.  *Crockett*, 316 F.3d at 584.  Further, even if plaintiff had denied

assaulting the victim, the officers would not have been required to investigate

further.  *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (stating that law

enforcement "is under no duty to investigate further" or look for exculpatory

evidence, nor do officers have to "give any credence to a suspect's story" and

forgo arrest in order to continue investigating) (citations omitted).

Because the defendant officers had probable cause to arrest plaintiff, they

are entitled to qualified immunity, and thus entitled to summary judgment, on

plaintiff's false arrest and false imprisonment claims.

Likewise, the defendant officers are entitled to summary judgment on

plaintiff's malicious prosecution claim.

> To succeed on a malicious prosecution claim
> under § 1983 when the claim is premised on a violation
> of the Fourth Amendment, a plaintiff must prove the
> following: First, the plaintiff must show that a criminal
> prosecution was initiated against the plaintiff and that the
> defendant "ma[d]e, influence[d], or participate[d] in the
> decision to prosecute."  Second, because a § 1983 claim
> is premised on the violation of a constitutional right, the
> plaintiff must show that there was a lack of probable
> cause for the criminal prosecution.  Third, the plaintiff
> must show that, "as a consequence of a legal
> proceeding," the plaintiff suffered a "deprivation
> of liberty," as understood in our Fourth Amendment
> jurisprudence, apart from the initial seizure.  Fourth, the
> criminal proceeding must have been resolved in the
> plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal citations omitted).  Such a claim fails, however, "when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." *Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir.2007); *Miller v. Davis,* 653 F. App'x 448, 455 (6th Cir. 2016) ("Sixth Circuit law dictates that a claim for malicious prosecution against a police officer cannot survive without evidence that the officer caused the plaintiff to be prosecuted.").

To satisfy the first element, it is not necessary that the defendants themselves made the decision to prosecute plaintiff, however, "[t]o be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids the decision, as opposed to passively or neutrally participating." *Sykes*, 625 F.3d at 308 n. 5.  As the Sixth Circuit explained, the requisite participation in the decision to prosecute must amount to "aiding" the decision in more than a passive or neutral way.  *Johnson v. Moseley*, 790 F.3d 649, 654–55 (6th Cir. 2015) (citation omitted). "That is, truthful participation in the prosecution decision is not actionable."  *Id.* (citing *Sykes*, 625 F.3d at 314); *Kinkus v. Vill. of Yorkville, Ohio*, 289 Fed. Appx. 86, 91 (6th Cir. 2008) ("This Court has held that a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful.").  The requisite blameworthiness was made out in *Sykes* by evidence that

both defendant officers testified for the prosecution and each made false

statements, made flagrant misrepresentations, or failed to disclose key items of

evidence. *Sykes*, 625 F.3d at 301–02, 306–07, 311–17.

Even viewing the facts in the light most favorable to plaintiff, there is no

evidence that the defendant officers participated in plaintiff's prosecution in

anything other than a neutral manner or that they submitted false reports. *See

Copen v. Noble County*, 2016 WL 687593, at *11 (S.D. Ohio Feb. 19, 2016)

(finding first element not satisfied because there was no evidence that the

defendants' participated in the prosecution in "anything other than a passive or

neutral manner."). Where there is failure to bring forth evidence establishing the

defendants' influence or participation, summary judgment is granted in defendants'

favor. In *Galinis v. Cty. of Branch*, 2015 WL 13037567, at *4 (W.D. Mich. Aug.

11, 2015), *aff'd*, 660 Fed. Appx. 350 (6th Cir. 2016), the court stated,

> [T]he complaint does not allege that any of
> the officers involved in Plaintiff's arrest testified falsely
> or provided false materials to the prosecutor's office in
> order to influence or participate in their decision to
> charge Plaintiff, or that the prosecutor or court relied on
> those falsehoods when determining that there was
> probable cause to initiate the criminal charges. . . .
> Additionally, the record is bare of any details concerning
> if, when, or how the law enforcement officers interacted
> with the prosecutor's office prior to the criminal charges
> being filed. Without any such information, Plaintiff has
> failed to establish a genuine issue of material fact as to
> whether the officers made, influenced, or participated in
> the decision to bring criminal charges. On the current

> record, no reasonable juror could find that
> the officers improperly influenced the charging decision,
> and thus Plaintiff has failed to establish one key element
> of the malicious prosecution cause of action.
> Accordingly, none of the Defendants can be held liable
> for malicious prosecution under the Fourth and
> Fourteenth Amendments

Similarly, in *Kinkus*, 289 Fed. Appx. at 91, the court held that the officer was not liable for malicious prosecution based on the first element of the claim. Specifically, the officer's involvement consisted of completing a police report, signing a blank criminal complaint form that did not recommend any particular charge, and soliciting a written report from a witness. Those documents were forwarded to the prosecutor. *Id.* There was no evidence that the officer was consulted or that he pressured the prosecutor to bring charges. *Id.* Further, the police report did not contain any false information.

Likewise, here, plaintiff does not allege, other than in the most conclusory fashion, that the officers testified falsely or provided false materials to the prosecutor in order to influence the decision to prosecute; and there is no evidence concerning if, when, or how the officers interacted with the prosecutor prior to commencement of the criminal proceedings. Though plaintiff alleges that the officers did "coerce and fabricate false citation against Mr. Pickett, while committing a criminal act of perjury," (Dkt. 1, Pg ID 10), plaintiff does not specify what false statements any of the officers allegedly made. Rather, the complaint

21

appears to challenge the existence of probable cause for the issuance of the

citation, stating: "Defendant Clemence withheld this information from his

supervisor and allowed Defendant Kirby to falsify criminal citation against

plaintiff for assaulted (sic) and battery, knowing he never witness any assault being

done by plaintiff." *Id.* Thus the "falsity" plaintiff references appears to be the

criminal citation itself. Defendants produced the citation in their motion in chief

(Dkt. 15-3), which merely contains plaintiff's demographic information, address

where the arrest took place, the charge alleged and court appearance information.

Plaintiff has not countered with anything close to the provision of false testimony

or false materials. Therefore, as in *Galinis* and *Kinkus*, defendant officers cannot

be held liable for plaintiff's malicious prosecution claim because there is no

evidence that the defendant officers participated in the decision to prosecute

plaintiff. Since plaintiff's claim fails on the first element, the remaining factors do

not warrant further regard.

b.    Fifth Amendment

It is not entirely clear upon what facts plaintiff bases his claim of a violation

to his Fifth Amendment rights. However, allowing for a generous reading of the

complaint it appears that plaintiff's Fifth Amendment claim is that the arresting

officers violated the law in failing to read him his *Miranda* warnings after or in

conjunction with his arrest, as he mentions that "defendants never once advised

22

plaintiff of his rights under the 5th Amendment." (Dkt. 1, Pg ID 10). Failure to read *Miranda* warnings without use of the compelled testimony at trial is not an actionable violation under § 1983 because no Fifth Amendment right could have been violated under those circumstances. *See Chavez v. Martinez*, 538 U.S. 760, 772-3 (2003). *Miranda* warnings are "a procedural safeguard rather than a right arising out of the Fifth Amendment itself." *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1442 (8th Cir. 1989). Furthermore, the remedy for such a violation is suppression of the evidence in the prosecution's case in chief. *See Missouri v. Siebert*, 542 U.S. 600 2004). Because there was no use of compelled testimony at trial against plaintiff, there is no actionable Fifth Amendment claim under § 1983 because no Fifth Amendment right could have been violated. Therefore, defendants cannot be liable to plaintiff for failure to read the *Miranda* warnings.

c.     Fourteenth Amendment

In his complaint, plaintiff mentions the following claim: the defendants "violated his Fourth Amendment Constitutional Rights to Due Process." (Dkt. 1, Pg ID 10). Plaintiff appears to have referred to the "Fourth Amendment" in error. He perhaps intended to refer to the Fourteenth Amendment due process clause, which provides, "[no] State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. IV, § 1. Indeed, plaintiff also states in

his complaint that he was deprived of his liberty without due process, pointing to the Fourteenth Amendment.  (Dkt. 1, Pg ID 10).  It is not clear if plaintiff is raising a procedural or substantive due process claim; both are addressed.

Even if there were a procedural due process claim, the claim should fail because it was not sufficiently pled.  "To establish a procedural due process claim, a plaintiff must show that (1) [he] had a life, liberty, or property interest protected by the Due Process Clause; (2) [he] was deprived of this protected interest; and (3) the state did not afford [him] adequate procedural rights."  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).  Plaintiff's complaint does not specify a protected liberty interest,[3] and plaintiff fails to bring forth any evidence, or otherwise claim, that adequate procedures were not provided before the deprivation of any liberty interest.  To the contrary, the record shows that plaintiff received adequate process: To wit – (1) plaintiff was arraigned one day after his arrest on the citation; (2) plaintiff obtained counsel after his arraignment on February 25, 2014, (Dkt. 17, Pg ID 120); (3) his counsel appeared at the pretrial hearings on March 3, 2014 and again on March 17, 2014, (*Id.*); (4) plaintiff attended his parole hearing on March 14, (*Id.*); and (5) the case was dismissed without prejudice because the witnesses failed to appear on March 31, 2014.  (Dkt.

---

[3]  To the extent that plaintiff may contend that the protected liberty interests at stake are being free from false arrest and imprisonment and malicious prosecution, those claims fail for the reasons discussed *supra*.

15, Pg ID 80).  Accordingly, defendant officers cannot be liable to plaintiff on plaintiff's procedural due process claim.

Defendants are also not liable on any substantive due process clause. Flowing logically from the proposition that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it," the Supreme Court has held that claims of seizure without probable cause should be addressed solely under the Fourth Amendment, not substantive due process. *Albright v. Oliver*, 510 U.S. 266, 274 (1994).  Plaintiff's claims are based on his arrest and pretrial detention.  Thus, under *Albright*, plaintiff's due process claim cannot stand.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Id.* at 273 (quoting *Graham v. Connor, supra,* 490 U.S. 386, 395 (1989)).  It is the Fourth Amendment that governs plaintiff's claims of false arrest, false imprisonment, and malicious prosecution. As discussed above, defendant officers are entitled to summary judgment on plaintiff's Fourth Amendment claims of false arrest, false imprisonment, and malicious prosecution.

Plaintiff also alleges that the defendants violated section three of the Fourteenth Amendment, stating that they committed perjury in their oaths of office to uphold the Constitution.  (Dkt. 1, Pg ID 11).  Section 3 states, in pertinent part,

> No person shall . . . hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, . . . as an executive or judicial officer of any state, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof.

*See also Lyons v. Sundquist*, 41 Fed. Appx. 832 (6th Cir. 2002) ("Section 3 of the Fourteenth Amendment disqualifies any person [from holding an office] who, having previously taken an oath as (among other things) a state judicial officer, shall have engaged in insurrection or rebellion against the United States.").  Plaintiff has not alleged or brought forth any facts suggesting that the defendants have engaged in insurrection or rebellion against the State of Michigan or the United States, or any facts showing the defendants have given aid or comfort to the enemies thereof.  Therefore, defendant officers cannot be liable to plaintiff for his Fourteenth Amendment, Section Three claim.

        2.      Statutory Claims

           a.      Civil Conspiracy

Plaintiff alleges that defendant officers conspired with defendant Marzano to bring false charges against him.  Presumably, plaintiff brings this claim under

subsection (3) of 42 U.S.C. § 1985 as well as under § 1983.  (Dkt. 1, Pg ID 9).

Plaintiff's claims lack merit under both sections.

A civil conspiracy under 42 U.S.C. § 1985 requires the plaintiff to allege

four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either
> directly or indirectly, any person or class of persons of
> the equal protection of the laws, or of equal privileges
> and immunities under the laws; and (3) an act in
> furtherance of the conspiracy; (4) whereby a person is
> either injured in his person or property or deprived of any
> right or privilege of a citizen of the United States.

*Keys v. Central Mortg. Co.*, 2014 WL 4897494, at *5 (E.D. Mich. Sept. 30, 2014).

A conspiracy under § 1985 "not only must have as its purpose the deprivation of

'equal protection of the laws, or of equal privileges and immunities under the

laws,' but also must be motivated by 'some racial, or perhaps otherwise class-

based, invidiously discriminatory animus behind the conspirators' action.'"  *United*

*Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825,

829 (1983) (quoting *Griffin v. Breckinridge*, 403 U.S. 88, 102 (1971)).

Here, plaintiff has not alleged any facts tending to show a racial or class-based

discriminatory animus.  Indeed, plaintiff does not mention discrimination at all.

Instead, plaintiff claims that the defendants conspired to bring a false charge of

assault and battery against him.  (Dkt. 1, Pg ID 11).  Therefore, defendants are not

liable under § 1985.

A civil conspiracy claim under § 1983 requires the following showing:

> [A]n agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks,* 771 F.2d 935 (6th Cir. 1985)).  According to plaintiff, the conspiratorial objective would have been to violate plaintiff's constitutional rights by arresting him without probable cause and bringing false charges against him.  As stated above, however, there was no constitutional violation associated with plaintiff's arrest because the officers had probable cause to arrest him.  *See Feathers v. Willamette Indus., Inc.*, 162 Fed. Appx. 561, 565-66 (6th Cir. 2006) ("It is a general rule that a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action.  The damage done is the gist of the action, not the conspiracy.") (quoting *Greene v. Brown & Williamson Tobacco Corp.*, 72 F.Supp.2d 882, 887 (W.D.Tenn.1999)).  Moreover, "[I]t is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'"  *Fieger v. Cox*, 524 F.3d

770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).  "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim or withstand a motion for summary judgment." *Hartsfield v. Mayer*, 76 F.3d 378 (6th Cir. 1996) (citations omitted).  In this case, plaintiff failed to bring forth any material facts to show that the defendants engaged in a plan to violate his constitutional rights.  He merely states that the defendants conspired to do so.  (Dkt. 1, Pg ID 10-11).

Because no constitutional right was violated during plaintiff's arrest or subsequent detention and because this conspiracy claim was not pled with sufficient specificity, defendants cannot be held liable for plaintiff's § 1983 conspiracy claim.

> **b.**    18 U.S.C. § 4 (Misprision of felony)

Misprision of felony is not a civil offense.  *See Defluiter v. Ohio*, 2009 WL 773923, at *1 (S.D. Ohio Mar. 19, 2009), report and recommendation adopted, 2009 WL 936440 (S.D. Ohio Apr. 7, 2009) ("[P]rivate individuals have no standing to enforce federal criminal statutes.).  Federal criminal statutes are enforced by way of a criminal action instituted by the United States, not by private citizen. *Id.* (citing *Am. Postal Workers Union v. Indep. Postal System of Am.*, 481 F.2d 90 (6th Cir. 1973)).  Therefore, defendants cannot be liable to plaintiff under 18 U.S.C. § 4.

C.   <u>Marzano's Motion for Summary Judgment (Dkt. 17)</u>

All of plaintiff's claims applicable to Marzano are based on his decision to prosecute him.  The prosecution decision and actions ancillary to it are entitled to absolute immunity because they were intimately associated with the judicial process and not made in an effort to act as an investigator.

Prosecutors enjoy absolute immunity for all acts undertaken in preparation for the initiation of judicial proceedings, or for trial, or which occur in the course of their role as advocate for the state.  *See Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).  "Absolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability."  *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000).  A prosecutor has absolute immunity for all acts "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  "But absolute immunity does not shelter a prosecutor's conduct unrelated to advocacy[,]" particularly acts deemed "investigative or administrative, rather than prosecutorial[.]"  *Nouri v. County of Oakland*, 615 Fed. Appx. 291, 301 (6th Cir. 2015) (citations omitted).  Nevertheless, "investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity, whereas other acts, such as the preliminary gathering of

evidence that may ripen into a prosecution, are too attenuated to the judicial

process to afford absolute protection." *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th

Cir. 1997).

> [A]cts taken to prepare for the initiation of judicial
> proceedings or to prepare for trial, are protected by
> absolute immunity.  By contrast, a prosecutor who
> "performs the investigative functions normally performed
> by a detective or police officer" such as "searching for
> the clues and corroboration that might give him probable
> cause to recommend that a suspect be arrested" is entitled
> only at most to qualified immunity.

*Cooper*, 203 F.3d at 947 (internal citations omitted).  "When the functions of

prosecutors and detectives are the same . . . the immunity that protects them is also

the same." *Buckley*, 509 U.S. at 276.  And, as with judicial immunity, the motives

of the prosecutor are irrelevant for purposes of immunity.  *Eldridge v. Gibson*, 332

F.3d 1019, 1021 (6th Cir. 2003).

Deciding to prosecute is an act "intimately associated with the judicial phase

of the criminal process." *Imbler*, 424 U.S. at 430.  Here, Marzano's decision to

prosecute plaintiff was intimately associated with the judicial phase of the criminal

process, and therefore any claims of a constitutional violation associated with the

prosecutorial act are defeated by absolute immunity.  Plaintiff's allegations that

Marzano caused him to be held in custody for 35 days while "trying to locate the

victim" and "for investigation purposes," are conclusory and unsupported by the

facts.  "The critical inquiry" for absolute immunity is "how closely related . . .  the

prosecutor's challenged activity [is] to his role as an advocate intimately associated

with the judicial phase of the criminal process."  *Holloway v/ Brush*, 220 F.3d 767,

777 (6th Cir. 2000).  Plaintiff has not challenged any particular act other than

"trying to locate the victim."  Marzano acknowledges that trial notices were sent to

the victim and her sister rather than subpoenas for their appearance at trial, and that

the witnesses did not appear.  (Dkt. 17, Pg ID 124).  Marzano argues that relying

on trial notices is an administrative act that is part of the judicial process.  As noted

in *Imbler*, prosecutors are absolutely immune from suit for acts involving initiating

prosecution because they are intimately associated with the judicial process.  424

U.S. at 430.  "[A]n individual prosecutor's [administrative] error in the plaintiff's

specific criminal trial constitutes an essential element of the plaintiff's claim."  *Van*

*de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).  Attempting to procure the

presence of the victim/witness at trial is an act that distinguishes this scenario from

those in which the act was deemed investigative.  For example,

> Investigative acts outside the scope of absolute immunity
> include giving legal advice to the police during a pretrial
> investigation, *Burns,* 500 U.S. at 494–96, 111 S.Ct. 1934,
> conspiring to fabricate evidence during the time before
> convening a grand jury, *Buckley,* 509 U.S. at 274–76,
> 113 S.Ct. 2606, and making false statements at a press
> conference, *id.* at 276–78, 113 S.Ct. 2606.  In addition, a
> prosecutor is entitled to only qualified immunity when
> she acts as a complaining witness by making sworn
> statements to the court in support of a criminal

32

complaint.  *Kalina,* 522 U.S. at 129–31, 118 S.Ct. 502.

*Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011).  Relying on trial notices to

procure the victim's presence is not analogous to these examples.  Plaintiff's claim

that Marzano was acting in an investigative function in trying to locate the victim

(i.e. a witness in the case), therefore, lacks merit.  Plaintiff has not alleged or

argued another act that he believes could be investigative rather than prosecutorial.

Thus, Marzano is protected by absolute immunity.

Because Marzano is entitled to absolute immunity on plaintiff's claims, the

undersigned recommends that summary judgment be granted in Marzano's favor.

D.     State Law Claims

Plaintiff's state law claims, if any, should be dismissed as well.  When a

plaintiff's federal claims have been dismissed on the merits, the question of

whether to retain jurisdiction over any state law claims rests within the court's

discretion.  *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002).  Indeed,

under § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction

over the remaining state law claims.  *Musson Theatrical, Inc. v. Fed. Express*

*Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are

dismissed before trial, the balance of considerations usually will point to

dismissing the state law claims.").  Here, there is no compelling reason to retain

supplemental jurisdiction over plaintiff's state law claims and thus, the

undersigned recommends that they be dismissed without prejudice.  Plaintiff is free to bring his state law claims in state court.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants Krueger, Kirby, and Clemence motion for summary judgment (Dkt. 15) be **GRANTED**, and that defendant Marzano's motion for summary judgment (Dkt. 17) be **GRANTED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  January 24, 2018                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on January 24, 2018, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Maurice Pickett, 652 Trowbridge, Detroit, MI 48202.

                                           s/Durene Worth
                                           Acting in the absence of
                                           Tammy Hallwood, Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov